## VALIDITY OF EXTENSION OF A STREET RAILWAY FRANCHISE.

Circuit Court of Montgomery County.

STATE OF OHIO, EX REL HERMAN, CITY SOLICITOR OF DAYTON, OHIO, v. THE OAKWOOD STREET RAILWAY COMPANY.

Decided, June 22, 1908.

*Municipalities—Extension of Street Railway Grant—Passage of Ordinance Delayed Beyond Expiration of Original Grant—Extension Ordinance a Temporary Act, When—Failure to Publish—Presumption—Consents—Mistake as to Name of Company—Change in Judicial Construction—Effect of, on Contracts not Retroactive—Overthrow of Doctrine of Classification—Irregularities in Passage of Ordinance—Waiver—Proceedings for Ouster—Section 2502.*

1. A grant extending a street railway franchise is not rendered invalid, because while awaiting certain enabling legislation, under an amicable arrangement between the municipality and the company, the passage of the ordinance extending the grant was deferred for some months beyond the termination of the life of the original grant.

2. An ordinance extending a street railway grant, which relates to but one road and involves no expenditure of money belonging to

the city, but is simply a contract between the railway company and the city, is not of a general or permanent nature, and is not rendered invalid by reason of failure to read it on three different days or to suspend the rules requiring this to be done.

3. The duty of publishing an ordinance rests upon the city, and in an action brought by the city solicitor to oust a street railway company from its franchise, it is encumbent upon the city to establish such an omission, and in the absence of proof to that effect a presumption arises that publication was regularly made.

4. Whether consents from abutting property owners were secured for such an extension is a matter which concerns the property owners only, and in the absence of complaint from them can not be used by the city as ground for an ouster proceeding; and, moreover, such an objection will be deemed to have been waived where many years have intervened.

5. The fact that the extension was granted to the Oakwood Street Railroad Company, instead of the Oakwood Street Railway Company, does not afford ground for an ouster, where it is admitted that it is one and the same company, and the city accepted the bonds of the company and all the bridge and street improvements made by it under the ordinance.

6. Inasmuch as judicial construction with respect to a statute is given the same effect in its operation on contracts and existing contract rights that would be given by legislative amendment, subsequent adjudications which seem to render Section 2502 unconstitutional will not be construed as having a retroactive effect upon a franchise founded on a good consideration and granted at a time when this statute would have stood the constitutional test; and particularly will such retroactive effect be denied in view of the curative provisions of Section 31 of the municipal code.

Sullivan, J.; Wilson, J., and Dustin, J., concur.

Quo warranto.

This action was brought originally in this court and submitted at its last term; it is an action to oust the railway company from its franchise. The issues are plain and well put, and there is little or no conflict in the testimony upon the main facts, and the questions of law arising upon the issues made and the facts presented have been so fully settled in our opinion that it does not seem necessary to do more than state the conclusions we have reached.

From the facts stated in the petition, taken in connection with the testimony submitted, we find that the action is properly brought.

The gravamen of the relator's complaint is that the railway company is exercising and enjoying the privileges and rights claimed by it in contravention of law. There is no complaint against the company that it is not exercising its franchises in in the interests of the public, or furnishing all the facilities for its patronage that are required by law and the terms of its contract with the city. The plain, simple question presented is whether it is exercising these privileges in contravention of law.

The railway company, in its response to the petition, sets forth in substance the ordinance granting to it the right and privilege of occupying the streets named for its tracks, and the operation of its cars thereon, and the agreement between the parties relative to the company continuing in possession and operation of its route until the negotiations looking to a renewal of its former grant were terminated; and in addition it sets forth the considerations that moved the city through its officials to apply to the Legislature to amend Section 2502, authorizing cities of its grade and class to grant originally, or extend grants, to street railway companies' franchises for a period of fifty years. That, relying upon the validity of the act as amended and of the ordinance enacted by the city in pursuance thereof, and upon the good faith of the city, it fully complied with and discharged the obligations to the city placed upon it by the city ordinance, and in addition expended large sums of money in the improvement and equipment of its road, etc., to keep pace with the demands of the public using its road.

The answer further sets forth that its route at the time of the passage of the ordinance was and is composed of two separate routes, which by proper proceedings under the statute were consolidated; and the consolidated route was known interchangeably as the Oakwood Railroad Company and the Oakwood Railway Company; that before consolidation the separate routes were known as Nos. 2 and 3. It sets forth the various expenditures of large sums of money. All were made on faith of the grant

of fifty years. That for the improvement of the streets required of the company, the grant for that period was the chief consideration offered by the city. It has been continuously subject to the valid ordinances of said city under its police power; that it has since on demand by the state paid one per cent. of its gross receipts.

The reply of the plaintiff, after denying many of the allegations of the answer of the company, sets forth in detail wherein the company is exercising rights and privileges in contravention of law; that the right and franchise claimed by the company began in 1891; that it does not and has not claimed any such rights except under the ordinance of that date; that the grant for route No. 2 expired March 17, 1891; that no ordinance or resolution was legally passed renewing said grant; that the ordinance of July 10, 1891, under which the company claims, was never legally passed; that the franchise for route No. 2, which expired March 17, 1891, could not be renewed unless renewed during the life of the original grant or, as expressed by the statute, at its expiration; that the ordinance of July 10, 1891, was not read upon three different days before its passage, and the rules requiring this were not suspended, and hence the ordinance is not valid; and that Section 2502 as amended, and under which the grant was attempted to be given, was unconstitutional.

The testimony produced shows that prior to the expiration of the original franchise for route No. 2, to-wit, March 16, 1891, the city council passed an ordinance extending the franchise for a period of twenty-five years from and after that date. Because of the burdens imposed upon the company by this ordinance the railroad company declined to undertake the burdens with a franchise for only twenty-five years. It seems to have been satisfactorily apparent to both the city and the railway company that to assume and undertake the burden imposed would result in financial embarrassment to the company. By an amicable arrangement between it and the city it continued in the operation of its road, and also in negotiations with a view of a renewal of said franchise, and having Section 2502 amended authorizing the

city to extend the grant for a period of fifty years and this amicable arrangement continued until the amendment was secured, and the passage of the ordinance of July 10, 1891, in pursuance thereof, extending the grant to the company for the period of fifty years from and after the date of the expiration of the respective grants. But relator claims because the statute provides that grants may be renewed at their expiration and that such statutes must be . strictly construed, therefore, the grant for route No. 2 having expired March 16, 1891, it could not be renewed July 10, 1891, as stated above.

The testimony if not directly, still by inference, clearly shows that a renewal was sought at the expiration of the former grant, although its completion was not fully accomplished until July ·10, 1891. During this period the parties were endeavoring to get together upon terms, and at ' no time were the negotiations looking to its completion abandoned. Each party was desirous to arrive upon terms, and the delay was not ,because either had abandoned the purpose · to renew.

We think, in view of these facts, and that now for the first time this claim is being made by the city, and the ordinance finally passed itself treating and designating it as a renewal, that the ordinance of July 10, 1891, should now be recognized and treated as a compliance with the statute.

The ordinance of July 10, 1891, was not read on three different days, nor were the rules suspended requiring this to be done; and hence relator insists that the railroad company has no grant or authority to maintain and operate its road upon the several streets composing its route; that it is an ordinance of a general or permanent nature, and unless it was read on three different days, or the rules dispensed with, it· was a nullity. In our opinion it was neither of a general or permanent nature. It related to but one road, involved no expenditure of the city's money, nor did it relate to the government of the city, and the limitation of the grant extended by it was absolutely fixed. At the time there was and now is a general ordinance of the city, passed long prior to the ·date of this one, relating to all street railways within the limits of the corporation. Furthermore, the

ordinance was simply a contract between the city and the railway company. We think, under the authority of *Railway* v. *Horstman,* 72 O. S., ——, it was a special act and temporary.

It is claimed by the relator that the ordinance was not published as required by the statute, and for that reason it is void. It was not incumbent upon the railway company to discharge this duty; it was upon the city. It seeks now to avail itself, to the prejudice of the company, of its own omission. Being incumbent upon the city, the burden of establishing this omission is upon it. We are of the opinion it has not discharged it; and in the absence of testimony on the point the presumption is that the ordinance was published.

The relator claims there is no proof of consents. Whether any were given as to the extension should not avail the city here, as that is a matter of the abutting land owners alone, and no one of that class is here complaining. The lapse of so many years after the extension was granted, without protest, we are inclined to the view that in law it constitutes a waiver.

The charter title of the defendant is the Oakwood Street Railway Company and the grant in the ordinance is to the Oakwood Street Railroad Company. It is therefore claimed by the relator that the respondent has no grant. The relator does not deny the allegation of the railway company that it is the same company. It negotiated the renewal with the Oakwood Street Railway Company. It acted upon the acceptance of the ordinance by that company, accepted its bonds and all the bridge and street improvements made by that company under the ordinances, concedes there is no Oakwood Street Railroad Company; that the respondent has since 1871 operated the route and that it is called interchangeably Oakwood Street Railroad Company and Oakwood Street Railway Company. Certainly under these facts the relator does not seriously contend that the railway company should be ousted for this reason.

In our opinion the ordinance contains but one subject.

It is claimed by the relator that Section 2502, as amended April 24, 1891, contravenes the Constitution and therefore the

grant of the city, July 10, 1891, to the railway company is invalid. At the time of the amendment Dayton was the only city in the state of the second grade of the second class. The classification by which it was placed in a class by itself was based upon a substantial difference in population, viz., below 30502 and above 20,000. This court upheld the classification of Dayton in what is known as the crematory case. Its judgment was affirmed by the Supreme Court.

Our attention has not been called, neither have we been able to find, any other case in which classification as applied to this city has been assailed; and whether it would be upheld when invoked under conditions disclosed in this case it is unnecessary we think for this court to venture an opinion. Upon the point, however, it may not be out of place here to call attention to the expression of the Supreme Court, made since the cases in 66 Ohio State, understood to overthrow the entire doctrine of classification, found in the second syllabus in *Gench* v. *State*, 71 Ohio State, 151:

"Within the legitimate purposes of general legislation not relating to the organization of cities and villages a *bona fide* classification on the basis of real and substantial difference in population, and out of conditions growing therefrom, may be valid."

Whether the section under consideration is repugnant to the Constitution under the 66th Ohio State cases is not the question that must determine the controversy here. A change in judicial opinions respecting the constitutional validity of legislative enactments can not have retroactive operation upon contracts entered into pursuant to statutory provisions and in reliance upon former adjudications respecting their validity. To give them such operation would violate another provision of the Constitution equal in importance to the one urged here.

"The true rule is to give a change of judicial construction in respect to a statute the same effect in its operation on contracts and existing contract rights that would be given to legislative amendment; that is to say, making it prospective but not re-

troactive.  After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself, and a change of decision is to all intents and purposes the same in its effect on contracts as on amendments of the law by means of a legislative enactment.  *Lewis* v. *Auditor Sims*, 61 O. S., 471; *Douglass* v. *County of Pike*, 101 U. S., 677.''

So that if, in view of adjudications since the amendment to Section 2502, April, 1891, the section is probably unconstitutional, yet as similar laws, including the same or similar constitutional defects, had been judicially determined valid theretofore and at the time of the grant to the railway company, the subsequent adjudications could not have a retroactive effect upon the grant, because it is a contract founded upon a good consideration.  *Shoemaker* v. *City of Cincinnati*, 68 O. S., 603.

In the case of the *State, ex rel Seymour, Prosecuting Attorney*, v. *Gilfillen*, this court held the tax inquisitor law unconstitutional, 19 Circuit Decisions, 709.

But we held that rights acquired by the inquisitor by virtue of contracts entered into according to the provisions of said act when that or similar acts were held by the highest court of the state to be constitutional were valid and subsisting rights and could be enforced.  This judgment was affirmed by the Supreme Court.

The ordinance is a contract between the railway company and the city, and hence the controversy here involves the above rule.

The overthrow of the doctrine of classification in the 66th Ohio State cases necessarily involved in doubt numerous rights acquired by citizens whilst the doctrine was upheld.  Whether feared or expected, yet so great was the surprise when it came that a special session of the Legislature was deemed imperative and it was called.  Rights similar in character to those involved in this case the Legislature evidently apprehended would be seriously affected, involved in doubt and become at once a source of serious litigation; and hence it fixed rights arising out of contracts by legislative enactment.  To avoid any question as to

the rights of parties acquired by contract theretofore it passed a curative act—Section 31 of municipal code of 1902.

Whilst we have seen that the relator, under the common law, is not entitled to the decree it prays for here, yet the Legislature has wisely removed all doubts that might arise.

Judgment for defendant.